(82 App. Div. 55.)

### PEOPLE v. O'CONNOR.

(Supreme Court, Appellate Division, First Department. April 9, 1903.)

1. CRIMINAL LAW—REMARKS OF COUNSEL—FAILURE TO EXCEPT.

   Comment of the assistant district attorney, in opening to the jury, that the case was not moved at that time because of the then pending "momentous political struggle," but because of the "strenuous efforts to delay it until after the 1st of January, probably," defendant not excepting, afforded no basis for a new trial.

2. SAME.

   Evidence tending to show that, when the officers discovered that accused was himself a police officer, a material change in their attitude

---

¶ 1. See Criminal Law, vol. 15, Cent. Dig. § 2199.

took place, justified comment on their conduct by the prosecuting officer.

3. SAME.

The evidence showed that accused, on being arrested, was taken to a saloon and laid on the floor, and his head allowed to rest on the bar rail, but that, when the police discovered accused was an officer, they put him in a chair and bolstered him up; and, in opening the case to the jury, the prosecuting officer stated such facts, and remarked that the police department had been "bolstering him up" ever since. *Held* not reversible error.

4. SAME.

It appearing that defendant, who had been arrested for an assault, afterwards became the aggrieved party, and made complaint against the person he had shot, the prosecuting attorney stated to the jury that it was a scene appropriate for the stage, and that such a thing should not be permitted in real life in New York City, and that "it out-Deverys Devery." *Held* not prejudicial error.

5. ASSAULT—INTENT TO KILL—EVIDENCE—SUFFICIENCY.

Evidence examined in a prosecution for an assault, and *held* to warrant a finding that it was done with intent to kill, within Pen. Code, § 217, making a shooting with such intent an assault in the first degree.

6. SAME—INSTRUCTIONS—BURDEN OF PROOF.

Where, in a prosecution for assault in the first degree, there were portions of the charge, which, if taken alone, would afford ground for a criticism that the court cast on defendant the burden of showing that the shooting was legally justified or excusable, but the court subsequently carefully charged the jury on "reasonable doubt," and that "through the case the burden is on the people, and that the presumption of innocence is carried all through the trial," there was no prejudicial error.

7. SAME—INSTRUCTIONS—CURE OF ERROR.

In a prosecution for assault in the first degree, the court said that if the jury should conclude prosecutor was not worthy of belief, etc., then they should take up defendant's case. Counsel for defendant excepted to the charge, as indicating that the jury were not to consider defendant's testimony until they had concluded that prosecutor's story was untrue, whereupon the court remarked that, if he made such a charge, he did not wish to be so understood, but that he had told the jury to determine the truth of either story by all the evidence. *Held*, that the error in the main charge was inadvertent, and was corrected.

8. SAME—REQUESTED INSTRUCTION.

If the defendant desired any more specific charge on the subject, he should have requested it.

9. SAME—INSTRUCTIONS—CONFLICTING EVIDENCE.

Where, in a prosecution for assault in the first degree, the testimony was extremely conflicting, and no theory was advanced whereby it could be reconciled, it was not error to charge that the stories were diametrically opposed, and that it would not be uncharitable to say that some one had willfully falsified.

10. SAME—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.

In a prosecution for assault with intent to kill, the evidence for the people tended to show that prosecutor was, without cause, assaulted by defendant, and in self-defense struck defendant, whereupon defendant shot him. Defendant's evidence tended to show that he was first assaulted by prosecutor, and that he shot in self-defense. Defendant was a police officer at the time, but was not on duty. Defendant requested a charge that the use or attempted use of violence is not unlawful when committed by a public officer in the performance of legal duty, or when committed in arresting one who has committed a felony, or when committed by a person about to be injured, or by any other person in his aid or defense, in preventing an offense against his person or a trespass. *Held* that, for the most part, the request had no applica-

tion to the case, and was properly refused; the court having already charged on self-defense.

11. SAME—INSTRUCTIONS.

A charge that if the only purpose of accused in firing his revolver was to attract attention, but some of the shots accidentally struck prosecutor, he was not guilty of any offense, was properly refused, because eliminating the prerequisite that the act was done to prevent an offense against the person of defendant, and that the violence used was not more than sufficient to prevent such offense.

Appeal from Court of General Sessions, New York County.

William O'Connor was convicted of assault in the first degree, and appeals. Affirmed.

See 76 N. Y. Supp. 511.

The alleged assault occurred February 16, 1901, and the indictment charges, in two separate counts, an assault in the first and second degrees, respectively. The defendant pleaded "Not guilty," and was brought to trial October 28, 1901.

In opening the case to the jury, the assistant district attorney, who conducted the prosecution, stated that the case was not moved at that time because of the then-pending "momentous political struggle," but because of the "strenuous efforts" to delay it "until after the 1st of January, probably." Counsel for the defendant interrupted, and denied any attempt on the part of the defendant to inject politics into the case or any effort to delay it, and asserted a desire to have the case tried on the facts only, whereupon the court declared that the case would be tried on the evidence only. The assistant district attorney then stated that when the assault occurred the defendant was in citizen's clothes, and that the police who were attracted to the scene did not recognize him as a patrolman at first, nor until he had been taken over to a saloon across the street, on the southeasterly corner of Fifteenth street and Seventh avenue and laid upon the floor, but that as soon as it became known that he was an "officer" he was put on a chair and bolstered up, and the "Police Department of the city of New York have been bolstering him up ever since." Defendant's counsel again interrupted with an objection to this statement, whereupon the court directed counsel for the people to "keep within the bounds of the opening," and said that the statements could not be proved, and should not have been made. Counsel for the people replied that he intended to prove the statement. No exception was taken, and no request to instruct the jury concerning these matters was made.

The people gave evidence tending to show that shortly after midnight on the morning of February 16, 1901, the complaining witness, Lorenzo D. Cummings, popularly known as "Dad Cummings," a man over 80 years of age, left Slevin's saloon or hotel, on the southwest corner of Fourteenth street and Seventh avenue, and proceeded north, on the westerly side of the avenue, on the way to his home, at 162 West Fifteenth street; that when about midway between Fourteenth and Fifteenth streets the defendant, who evidently came up from behind, seized him by the collar and whirled him around; that he told the defendant to let go, but the defendant said nothing; that he pushed defendant's hand off and started on, whereupon defendant again seized him violently and whirled him around; that he remonstrated, but that defendant still remained mute; that he again pushed off defendant's hand; that defendant then struck him on the side of the head, knocking his cigar holder out of his mouth, and his hat off; that he stepped back, and defendant attempted to strike him again, whereupon he hit defendant across the face with a light malacca cane with which he was walking, and which was exhibited to the jury; that each then stepped back from the other, and the defendant drew a pistol and fired three or four shots at Cummings, one of which struck him a little below the heart and passed directly through the body to the back, where it lodged, and another struck him on the elbow and passed up his arm, and lodged somewhere at the back of the upper arm or shoulder; that the defendant then started to run, but slipped and fell, and an officer came up and took the pistol away from him; that Cum-

mings then started across the street, and fell unconscious on the opposite sidewalk, his cane having broken as he fell; that he was taken into the saloon into which the defendant was taken, and, after regaining consciousness, he recognized the defendant as the man who shot him; that defendant was then or soon after recognized as a policeman off duty and in citizen's clothes; that Cummings was taken to a hospital, and the defendant, who was extremely intoxicated, was taken to the station house, and into a waiting room in the rear, where the injuries which he had received were dressed, and he was then taken to the desk and made a charge of assault against Cummings. The physician who examined him in the waiting room testified that the only injury or bruise on his face was a flesh wound or cut on the left eyebrow. There was evidence from which, if believed, it might be inferred that the officer who took the pistol from defendant struck him with his club. There was also evidence tending to show that the police handled the defendant unceremoniously, and laid him on the floor of the saloon, with his head on the bar footrail, before he was known to be an officer, and that afterwards he was placed upon a chair.

The defendant testified in his own behalf, and called other witnesses, who, if believed, corroborate his version of the affair. The evidence on behalf of the defendant tended to show that he was a policeman attached to the Eighteenth Precinct, generally known as the "Steamboat Squad"; that he lived at 97 Seventh avenue, which was at or near the corner of Fifteenth street; that he had to report for duty at 1 o'clock; that he would have to leave his house at 22 or 23 minutes before 1 in order to get to his station house, at the Battery, by 1 o'clock; that he was in citizen's clothes and sober; that he got off a Cross-Town car at the corner of Fourteenth street and Seventh avenue, and walked rapidly along the west side of the avenue toward his house; that, as he approached the corner of Fifteenth street, he overtook five or six men walking abreast, and taking up nearly the whole sidewalk; that, as he passed them, he was near the curb, and hit against the old man, Cummings; that he turned around and tried to excuse himself; that the old man struck him with his stick on the left forehead, knocking him down; that as he fell he struck the back of his head on the paving stones, becoming unconscious for a few moments; that, as he came to, he found the whole crowd kicking and beating him; that he caught one man by the coat, and tried to get up, but was knocked down again; that he drew his revolver and fired in the air to attract attention, but not to hit anybody; that, the next thing he knew, a policeman had him by the hand, and that he told the policeman he had been assaulted by a "gang"; that he was taken to the saloon, and stood up in front of Cummings, who said that defendant was the man that shot him. Defendant further testified that he was injured in a number of respects besides the cut on his left forehead.

The defendant's pistol was produced in court. It was a five-chambered revolver. The officer who took it from the defendant testified that the defendant held it in his hand, and that one loaded cartridge and three or four empty shells were in it when he took it. The people also introduced evidence tending to show that some time after the occurrence the defendant admitted that he had been drinking, and knew nothing about what took place, and was willing to settle with Cummings, and suggested the payment of $800. This evidence was received without objection or exception, but evidence was offered by the defendant tending to refute it. In rebuttal, Cummings testified that he was alone, and that he saw no one else on the block, at the time of the occurrence.

At the close of the evidence, the defendant's counsel asked that the court direct an acquittal; also that the court take away from the jury the first count in the indictment, for assault in the first degree. Both motions were denied, and exceptions taken.

In summing up, counsel for the people commented on the change of attitude of the police on discovering that defendant was an officer, and in taking him to the station house, but not charging him with a crime; taking him into a room, and, after three-quarters of an hour, when he became well enough, walking him out in front of the desk as a complainant against old Mr. Cummings, whom he had shot. He then continued: "Gentlemen, I tell

you that that is a scene for comic opera, not for the great city of New York. It out-Deverys Devery." Counsel for defendant objected, asserting that it was an improper remark, in the midst of a political campaign, and asked the court to take notice of it. The court stated that perhaps Devery had nothing to do with it, and agreed with counsel for the defendant that it was highly improper for the district attorney to inject "Devery into the case," and directed him to "refrain from any such comments."

The exceptions and alleged errors relating to the charge will be stated and discussed in the opinion.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Bartow S. Weeks, for appellant.
Howard S. Gans, for the People.

LAUGHLIN, J.   The appellant contends that the conduct of the assistant district attorney upon the trial was seriously prejudicial to him, and requires a reversal of his conviction. This claim is based upon the remark in the opening and summing up, the substance of which is stated in the statement of facts. The remarks concerning efforts to delay the trial and with reference to the pending election indicate that they were said in response to something said by counsel for the defendant in moving the case or during the examination of the jurors, but this does not appear. However, no exception was taken, and this incident affords no basis for a new trial.

There was evidence tending to show a material change in the attitude of the police officers who had knowledge of the facts on the night of the shooting, after they discovered that the defendant was a fellow officer. This not only justified, but fairly called for, comment from the prosecuting officer, to enable the jury to determine the value of their testimony. Perhaps it did not, however, justify the statement that the police department had been bolstering the defendant up; but this was made in connection with the statement of facts as to what the defendant's fellow officers did at the time of his arrest, and we think that the jury must have understood that it related to the conduct of the members of the force who were witnesses for the defendant, and not to the entire department. The district attorney, as a prosecuting officer, is entitled to some degree of license in commenting upon the testimony of witnesses, and the attitude and nature of the defense as disclosed by the evidence. As has been observed, there was evidence which would justify a finding that there was a marked change in the attitude of the members of the force who were present on discovering that the defendant was an officer; and shortly thereafter the defendant, who had been arrested for committing the shooting, became the aggrieved party, and complainant against Cummings, whom he had shot. We discover no error prejudicial to any right of the defendant in the assistant district attorney saying to the jury, in substance, that in his opinion this was a scene appropriate for the stage, but that such things should not be permitted in real life in the city of New York. There was no charge that Devery was connected with or interested in the defense, and nothing was said to indicate that he was. He was a public char-

acter, and the press had given considerable attention to his methods while connected with the police force. The reference to him was a mere figure of speech used in commenting on the conduct of the defendant and his brother officers, and presents no error.

The defendant also contends that the first count of the indictment, charging assault in the first degree, should have been taken from the jury. There was evidence from which the jury might infer that the shooting was with intent to kill, and this would constitute the crime of assault in the first degree. Pen. Code, § 217.

The defendant also contends that an acquittal should have been directed, and that the evidence does not warrant his conviction. We are of opinion that the guilt of the defendant was clearly established, and that any other verdict would have been a miscarriage of justice. His story, although corroborated, is utterly improbable, and is contradicted by the uncontroverted physical facts. Even if he had been assaulted as he claimed, there was no justification or excuse for his emptying four chambers of the revolver upon his assailants, most of whom—if they were there at all—disappeared on the first shot being fired, on the theory that it was intended to frighten them away. It would have been extremely difficult, even in daylight and by special effort, for Cummings to get in a position over the prostrate form of the defendant which would enable the latter to fire a bullet through the body of the former as shown by the evidence; and it is utterly incredible that this could have occurred with the defendant in that position, while the octogenarian was striking or attempting to strike him with his cane. It is extremely improbable that the defendant, a young, strong, hardened, athletic man, could have been knocked down by a blow of this light cane wielded by an old man. The evidence shows beyond any reasonable doubt that the defendant was intoxicated and ugly, and fired these shots while in a standing attitude, and without any cause or provocation. If his guilt were not so satisfactorily established, there are exceptions in the case which would justify a new trial; but we think the defendant was not prejudiced by the errors, which are more technical than substantial.

It is claimed that the court, in charging the jury, cast the burden of proof upon the defendant of showing that the shooting was legally justified or excusable. There are portions of the charge in which the court was discussing the defendant's evidence and theory, which, if taken alone, afford ground for this criticism; but the court subsequently fairly and accurately charged the jury as to what constituted a reasonable doubt, and instructed them that if, upon all the evidence, they had a reasonable doubt of the defendant's guilt, he was entitled to the benefit of that doubt, and should be acquitted, and further, at the request of the counsel for the defendant, that "all through the case the burden of proof is upon the prosecution," and that "through the case the defendant has the presumption of innocence, and carries it with him all through the trial," and "that the presumption of innocence must be overcome beyond a reasonable doubt." We are therefore of the opinion that the jury understood the law, and that no error to the substantial prejudice of the appellant was committed in this regard.

The court, after adverting to the testimony of Cummings, and submitting his credibility to the jury, said:

"If you come to the conclusion that Mr. Cummings is not worthy of belief, that his story is a fabrication, and that he has not told the truth, then take up the defendant's version of the case."

The court then alluded to the evidence given by the defendant and his witnesses. At the close of the charge, counsel for the defendant said he desired to except to so much of the charge "as might seem to indicate that the jury were not to consider the testimony of defendant's witnesses or of the defendant until after they had reached the conclusion that the complainant's story was untrue," whereupon the court remarked, "I have not made any such charge, and I do not think the jury understand me as making any such charge." Counsel for the defendant then said, "We so understand your honor's language to run, I think," to which the court replied, "No; I told them to determine the truth of either story by all the evidence." We think the error in the main charge was inadvertent, and was corrected by what the court subsequently said; and, if the defendant desired any more specific charge on the subject, his counsel should have requested it.

The court said to the jury, in contrasting the testimony of the people with that of the defendant and his witnesses:

"The two stories are diametrically opposed, and I do not think that I would be uncharitable when I say that somebody has willfully falsified in the case. All the witnesses have not told the truth, for they differ too much for that, and it seems to me that it would be more than charitable to say that some have not willfully prevaricated."

This was a mere expression of opinion by the court, and was not a controlling direction. The jury were still at liberty to reconcile the testimony consistently with the truth of the witnesses, if that were possible. While it is ordinarily improper for the court to give expression to personal views as to the credibility of witnesses, we think no harm was done in this case, for no theory was suggested and none is apparent upon which the conflicting testimony could be reconciled consistently with the honesty and truthfulness of all the witnesses.

Counsel for the defendant requested the court to charge that:

"If the defendant, while on the ground, after having been struck by the complainant, fired his revolver to attract attention, with no intention of hitting the complainant, and that the hitting of the complainant was a mere accident, the defendant is entitled to an acquittal."

The court had in the main charge read to the jury both sections 26 and 205 of the Penal Code, and fully and properly instructed them concerning the right of self-defense, and, upon this request being made, said that "excusable assault" had not been defined to the jury, because the court did not understand that the defendant made that claim, and supposed that the defendant's contention was that the assault was justifiable. Then, evidently paraphrasing section 203 of the Penal Code, the court said to the jury:

"An assault is excusable when committed by accident and misfortune, in doing any lawful act by lawful means, with ordinary caution, and without any unlawful intent."

81 N.Y.S.—36

Counsel for the defendant did not except to the omission of the court to charge as requested, but excepted to this charge as made, and requested the court to charge—

"That the use or attempted use of force or violence upon or towards the person of another is not unlawful when it is necessarily committed by a public officer in the performance of a legal duty, or when necessarily committed by any person in arresting one who has committed a felony, or when committed by the person about to be injured, or by any other person in his aid or defense, in preventing or attempting to prevent an offense against his person, or a trespass or other unlawful interference with his person or property."

The court inquired whether counsel for the defendant was reading from the Code, and, on receiving an answer in the affirmative, said:

"I do not intend to charge all the law in the Code. Excepting as I have already charged, I decline to charge. That which you read is good law, of course; but, excepting as I have already charged, I decline to charge that proposition."

There is no evidence that the defendant was acting as a public officer in the performance of a legal duty when he shot the complainant, or that he was attempting to arrest any one who had committed a felony, or that he was aiding another person about to be injured in his person or property, or that he himself was resisting an offense against his property rights. Consequently, for the most part, the request had no application to the facts of the case; and the court evidently declined making it upon this ground, at the same time informing the jury that it was the law. We think the jury would understand from the instructions previously given that the defendant was not guilty if he shot the complainant in preventing or attempting to prevent an assault upon himself, and that the shooting was necessary to prevent such offense against his person. If counsel for the defendant deemed that that was not made clear to the jury, he should have made a specific request to that effect, under subdivision 3 of section 223 of the Penal Code, which he must have understood, from the remarks of the court, would have been granted.

Counsel for the defendant then requested the court to charge that:

"If the only purpose of the defendant in firing his revolver was to attract attention, or to call or summon the police, and, in so doing, one or more of the shots hit the complainant—that, without any intent on the part of the defendant, the shots struck the complainant—he is not guilty of any offense."

Whereupon the court repeated the charge previously made, as to what constituted an excusable assault, and declined to charge the request, to which the defendant took an exception. This request eliminated entirely the prerequisite that the act was done to prevent an offense against the person of the defendant, and that the force or violence used was not more than sufficient to prevent such offense, and consequently the refusal to charge it constituted no error.

We are also of opinion that the motion for a new trial on the ground of newly discovered evidence was properly denied. It was not satisfactorily shown that it could not have been produced upon

the trial, with due diligence; and we do not think it would have changed the verdict, had it been presented.

It follows that the judgment should be affirmed.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur.  O'BRIEN and INGRAHAM, JJ., concur in result.